UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MAURICE W. HOOKER,

　　　　　　Petitioner

　　　v.

M. SPEARMAN, Acting Warden,[1]

　　　　　　Respondent.

Case No:  11-1652 SBA (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

On August 26, 2008, Petitioner Maurice Hooker pleaded no contest in Santa Clara County Superior Court to inflicting corporal injury on his spouse, Cal. Penal Code § 273.5(a), and inflicting corporal injury on a child, his stepdaughter, id. § 273d(a). Petitioner also admitted four allegations that he had: (1) inflicted great bodily injury upon his spouse; (2) previously been convicted of inflicting corporal injury on a child and had not remained free of both prison custody and felony convictions for ten years; (3) previously been convicted of a serious felony; and (4) suffered five prior strike convictions under California's Three Strikes law.  Prior to sentencing, Petitioner filed a Romero motion to dismiss his prior strike convictions.  On April 2, 2009, the trial court denied the Romero motion, and sentenced Petitioner to an indeterminate term of fifty years to life in prison, consecutive to a determinate term of thirteen years.

This matter is now before the Court for consideration of Petitioner's pro se petition for a writ of habeas corpus under 28 U.S.C. § 2254.  He alleges a Sixth Amendment claim for ineffective assistance of counsel ("IAC") on multiple grounds and a claim that the trial

---

[1] Marion Spearman, the current acting warden of the prison where Petitioner is incarcerated, has been substituted as Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

court improperly denied his <u>Romero</u> motion.  For the reasons discussed below, the petition is DENIED as to all claims.

## I.   **BACKGROUND**

### A.   STATEMENT OF FACTS

The following facts are taken from the opinion of the California Court of Appeal:

> In February 2008, defendant lived in San Jose with his wife, Cynthia, their three children, Cynthia's 17-year-old daughter by a prior marriage, Destiny, and Cynthia's father, Fred.  On the evening of February 13, defendant was in the garage drinking with a friend.  He came inside the house and started yelling at Fred.  Cynthia then came downstairs to try to break up the argument.  (Defendant is about six feet tall and weighs approximately 330 pounds.)  Defendant began striking Cynthia in the face with an open hand.  Cynthia fell to the kitchen floor and was crying.  Destiny–who had been in her bedroom and had heard the argument and defendant striking her mother– went out of her room to see if her mother was all right.  As Destiny walked toward the kitchen to help her mother get off the floor, defendant told her to go back to her room.  Destiny refused and continued walking toward the kitchen.  Defendant approached Destiny and she walked backwards.  She got into an argument with defendant while she was in the doorway of her room.  She told him that she was going to help her mother; she "started yelling and cussing[,] saying that [she] was . . . tired of all the 'BS' and . . . all this drama."  Defendant began hitting Destiny.  After hitting her a few times in the face and in the chest, she fell to the floor.  (1CT 17 [Destiny])  Defendant kicked Destiny about three times while she lay on the floor.

> Cynthia went to Destiny's room.  After Destiny had gotten back on her feet, her mother was standing between her and defendant.  Defendant struck his wife in the face, causing her to fall back into Destiny.  Destiny fell back into a glass picture hanging on the wall; she struck it with the back of her head, breaking the glass.  Cynthia hit her head on the corner of a wooden shelf and blacked out for a moment.  Destiny saw that her mother "was bleeding really badly."  Destiny tried to get up to help her mother off the floor, but defendant kept pushing her down.  Cynthia faded in and out of consciousness.  After Destiny cleaned up the broken glass and some of the blood in the house, she packed a few belongings and went over to a friend's house to spend the night.  Before she left, defendant made several threats that he was going to kill her.

> The next day, Destiny went to the hospital to "make sure nothing was broken."  As a result of defendant's assault, she had a cut lip, a baseball-sized knot on the back of her head, and bruises on her shoulder, inner thigh, and forearm.  Also on the day after the incident, Cynthia was taken to the hospital.  She was diagnosed as having had a concussion and a broken nose.  After several days, Cynthia's right eye was swollen shut.

About four days after the incident, defendant told his wife that she had injured herself that night by falling down the stairs. Cynthia testified at the preliminary hearing that she told defendant that she believed that he had struck her; however, she did not recall the events of February 13 after she interceded in the argument between defendant and her father.

**THE PRIOR STRIKES**

In June 1992, defendant committed five robberies at gunpoint, three involving bank tellers, one involving a gas station attendant, and one robbery for which the circumstances are not disclosed in the record. Defendant claimed that the weapon was a toy gun. In August 1992, defendant was convicted of five counts of robbery (Pen. Code, §§ 211/212.5, subd. (b)) and was sentenced to seven years in prison.

**THE PRIOR CONVICTIONS UNDER SECTION 273d**

In May 1999, Destiny (age nine at the time) arrived home a few minutes late from school. She and defendant got into an argument, and he hit her in the face because he thought that she was lying. As a result of the incident, in July 1999, defendant was placed on four years' probation for a violation of section 273d, subdivision (a).

In December 2003, defendant was again convicted of violating section 273d, subdivision (a), and was sentenced to four years in prison. The conviction arose out of an incident in which defendant disciplined his 11-year-old daughter by striking her numerous times with a belt. As a result, the child sustained bruises on both legs, her left arm and left chest; she also received a welt on her left wrist.

Answer, Ex. 6 at 2-4 (footnotes omitted).

**B.    PROCEDURAL HISTORY**

**1.    No Contest Plea**

Petitioner pleaded no contest on August 26, 2008. The record shows that prior to entry of such plea, the trial court engaged Petitioner in a plea colloquy:

THE COURT: And sir, I am going to ask you a series of questions. If at any point in time you have any questions or need any clarification on any point, would you let me know?

THE DEFENDANT: Yes, ma'am.

THE COURT: Have you consumed any drugs, alcohol or medication in the last 24 hours that would impair your ability to think clearly today?

THE DEFENDANT: No, ma'am.

United States District Court
Northern District of California

1

THE COURT: And have you had sufficient time to discuss your case with your attorney, specifically the charges against you and the elements of those charges, the possible defenses available, and your constitutional rights, and the consequences of your decision to enter a plea of guilty or no contest to the charges and admit the allegations and enhancement set forth in the Information?

THE DEFENDANT: Yes, ma'am.

THE COURT: And are you satisfied with your attorney's advice?

THE DEFENDANT: Yes.

THE COURT: Has anyone threatened, pressured you, or coerced you, or anyone close to you, in order to get you to plead guilty or no contest and admit the allegations and enhancement set forth in the Information?

THE DEFENDANT: No, ma'am.

THE COURT: And would you be doing so freely and voluntarily?

THE DEFENDANT: Yes, ma'am.

THE COURT: And now, because you're admitting that you have suffered two or more strikes, you will not be eligible for probation, and subject to a mandatory state prison commitment for an indeterminate term of life, the minimum term of which is 65 years. The term is commonly referred to as 65 years to life. ¶ Do you understand that?

THE DEFENDANT: Yes, ma'am.

THE COURT: And the disposition of this case is that there are no conditions. This means that you may be sentenced to state prison for the term I just indicated, up to a life term. ¶ Is that your understanding?

THE DEFENDANT: Yes.

THE COURT: And because of the strike allegations, of course, you are currently ineligible for a grant of probation. And the actual sentence that you receive is also subject to [] <u>Romero</u>. Because it is my understanding that your attorney is going to be making what is known as a <u>Romero</u> request, essentially a request that the Court strikes [sic] some or all of the prior strike convictions, but no sentencing promises are being made in that regard. ¶ Is that your understanding as well?

THE DEFENDANT: Yes.

THE COURT: Based upon the current charges, allegations and

4

1  enhancements, that means that you would not be eligible for parole for 65 years. Do you understand that?

2  THE DEFENDANT: Yes.

3  Answer, Ex. 2A (Reporter's Transcript ("RT") 8/26/08 re Plea) at 3-5.

4  The court also informed Petitioner that he was giving up the rights to a jury trial, to

5  confront witnesses, against self-incrimination, and to present a defense.  Id. at 6-8.

6  Petitioner confirmed that he understood that he was waiving those rights.  Id.  The court

7  asked defense counsel if he was satisfied that his client understood each of his rights and

8  was in the proper state of mind to intelligently enter a plea of no contest.  Defense counsel

9  answered, "Yes."  Id. at 11.  Before taking Petitioner's plea, the court allowed defense

10  counsel one last opportunity to ask any questions, though he did not do so.  Id. at 12.

11  Petitioner then pleaded no contest to both counts and admitted all allegations.  Id. at 12-17.

12  The court asked defense counsel if he "concur[red] in the admissions, waiver of rights and

13  pleas."  Id. at 17.  Defense counsel replied in the affirmative.  Id.  Defense counsel also

14  stipulated that there was a factual basis for the pleas and admissions based on the police

15  report and related documents contained in the court file.  Id. at 17-18.  Following this

16  exchange, the trial court stated as follows:

> And the Court finds that the Defendant has been properly advised of the charges against him, and the elements of the charges, the possible defenses and the consequences of his pleas and admissions.  ¶  And the Court finds that the defendant has been fully informed of his constitutional rights, and has made a knowing, intelligent, free and voluntary waiver of those rights.  ¶  And based on the stipulation of counsel and the documents in the Court's file, including the police report and the preliminary hearing transcript, the Court finds that there is a factual basis for the plea.

22  Id. at 18.  The court then referred the matter to Adult Probation for "preparation [of] a full

23  pre-sentencing report."  Id. at 19.

24  **2.  Probation Officer Interview**

25  On September 2, 2008, Deputy Probation Officer Sonya Schuett interviewed

26  Petitioner in the course of preparing her sentencing report.  Answer, Ex. 1B at 463-476.

27  Petitioner described the February 13, 2008 incident as "a big family argument that led to

28  events that placed him in jail."  Id. at 468.  He added that he "feels bad for the incident and

5

takes responsibility for his actions." <u>Id.</u>  Regarding sentencing, Petitioner stated that "he hopes to have success at [his] <u>Romero</u> [motion]." <u>Id.</u> at 469.  Petitioner "hopes the Court is fair" and allows him "the chance to say his side of things . . . ." <u>Id.</u>  Petitioner informed the probation officer that he was "preparing a written statement, which is currently ten pages, and [that he] would like the sentencing judge to read it prior to his sentencing." <u>Id.</u>

### 3.    <u>Romero</u> Motion and Sentencing

On February 27, 2009, Petitioner's defense counsel filed a motion requesting that the trial court strike each of the prior strike convictions pursuant to <u>People v. Romero</u>, 13 Cal. 4th 497 (1996).  Under <u>Romero</u>, a California sentencing court may, in its discretion, strike a prior felony conviction allegation "in furtherance of justice," an "amorphous concept" requiring the trial court to consider both "the constitutional rights of the defendant, and the interests of society represented by the People." <u>Id.</u> at 507, 530.

On March 6, 2009, the trial court heard argument on the <u>Romero</u> motion.  Answer, Ex. 2B (RT 3/6/09 re <u>Romero</u> Hearing) at 3-14.  Petitioner was present at the hearing, along with some members of his family.  <u>Id.</u> at 3-4.  The trial court informed the parties that she had read "the papers that have been presented, as well as the pre-sentence report." <u>Id.</u>  Petitioner's defense counsel asked the court to "strike the strikes in their entirety and sentence him to [a total aggregate] 15 year period," which was based on a "mid-term sentence." <u>Id.</u> at 7.  The prosecution opposed the motion and argued that striking the prior strike convictions would constitute an abuse of discretion by the trial court.  <u>Id.</u> at 7-9.  The prosecutor argued that it was "not even a close call" because Petitioner "has not been rehabilitated through probation and he didn't even learn his lesson or was deterred from parole." <u>Id.</u> at 9.  The trial court took the matter "under submission only for a week's time," and scheduled the matter for March 10, 2009.  <u>Id.</u> at 13.

On March 10, 2009, defense counsel, with Petitioner present, asked the trial court to consider additional authorities supplementing the authorities presented in support of the <u>Romero</u> motion.  Answer, Ex. 2C (RT 3/10/09 re <u>Romero</u> Hearing) at 17.  The court rescheduled the matter for April 2, 2009 to afford the prosecutor an opportunity to respond.

Id. at 18.

On April 2, 2009, the trial court acknowledged that she "entertain[ed] previous arguments," but "subsequent to that, defense counsel has produced some authority for the proposition that if the Court were to deny the Romero request that the Court would have the ability under the law to run a second life term concurrent to the . . . first – the life term in Court 2 concurrent to the term in Count 1."  Answer, Ex. 2D (RT 4/2/09 re Sentencing) at 24.  After hearing more argument from both parties, the court denied the Petitioner's Romero motion, commenting:

> . . . I would start by saying that I do not believe that the current case presents circumstances that are outside the spirit of the three strikes law.
>
> I want counsel to know that I have seriously considered the Romero request.  And ultimately, the factors in aggravation simply overwhelmed any factors in mitigation.
>
> Accordingly, the Romero request is denied for the following reasons: The violent nature of the defendant's conduct in the present case; ¶ The serious nature of the injuries resulting from the defendant's conduct in the present case; ¶ And the fact that there were multiple victims in the present case; ¶ The fact that the prior felony conviction for child endangerment involved a separate victim other than the child victim involved in the present case; ¶ The fact that four out of the five strike priors were previously stricken allowing the defendant an opportunity to receive a determinate term for his prior felony endangerment convictions, and thereby prove that he could be rehabilitated and did not pose an ongoing threat to public safety; ¶ And the fact that the defendant reoffended with violent conduct perpetuated against a separate child victim than the child victim who was the subject of a previous felony conviction, for which the defendant served a term in prison, as well as the fact the current offense involved multiple victims.
>
> And based upon the circumstances of the present case, the defendant's violent conduct appears to be escalating in terms of seriousness.
>
> I also considered the fact that following the serious infliction of injuries upon the victims in the case at hand, the defendant did not make any efforts to seek medical aid for his victims.

Id. at 27-29.

As noted, the court then sentenced Petitioner to fifty years to life in prison consecutive to a determinate term of thirteen years.  Id. at 29-31.  There is nothing in the

United States District Court
Northern District of California

record regarding whether Petitioner submitted a written statement to the judge prior to sentencing.  After sentencing, the trial court gave defense counsel an opportunity to speak with Petitioner, and offered to answer any questions about its rulings, if necessary.  Id. at 33.  Defense counsel asked only one question relating to the court's position of "giv[ing] consecutive sentencing no matter what in this case."  Id.  The trial court responded that she did not believe that she had discretion to impose a concurrent life term on Count 2.  Id. at 33-34.  The Court then explained to Petitioner how to file an appeal from the sentencing:

> . . . if you wish to appeal, you must file the written appeal to the Clerk of this Court within 60 days from today's date.  ¶ And if you appeal and you are unable to hire an attorney, the appellate court would appoint an attorney to represent you at no cost to you.  ¶  And you have the right to have a free transcript and record of the necessary proceedings of this Court.  And the written notice of appeal must be appropriately filed.

Id. at 34.  Finally, the trial court asked Petitioner directly about whether he "ha[d] any questions about how [he] would appeal."  Id.  Petitioner answered, "No."  And when asked whether he understood that he had a right to appeal," Petitioner said, "Yes."  Id.

### 4.    Appeals and Writ Petitions

On direct appeal, Petitioner raised the claim that the trial court erred in denying his Romero motion.  Answer, Ex. 3.  On December 18, 2009, the California Court of Appeal, in a reasoned opinion, rejected that claim and affirmed the judgment.  Answer, Ex. 6.  Specifically, the state appellate court found that the trial court "did not abuse its discretion in denying [Petitioner's] Romero motion."  Id. at 11.  On February 24, 2010, the California Supreme Court denied review.  Answer, Ex. 8.

On June 1, 2010, Petitioner filed a state habeas petition in the California Supreme Court raising his IAC claim.  Answer, Ex. 9.  On December 21, 2010, the state supreme court summarily denied his petition.  Answer, Ex. 10.

On March 15, 2011, Petitioner filed the instant federal habeas corpus petition.  Dkt. 1.  This Court issued an order to show cause on April 25, 2011.  Dkt. 7.  Respondent filed an answer.  Dkt. 8.  Petitioner did not file a traverse.

8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

## II.    <u>LEGAL STANDARD</u>

### A.    28 U.S.C. § 2254(D)(1)

The instant petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under AEDPA, a federal court cannot grant habeas relief with respect to any claim adjudicated on the merits in a state-court proceeding unless the proceeding "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent."  Lockyer v. Andrade, 538 U.S. 63, 73 (2003) (internal quotation marks omitted).

On federal habeas review, the district court reviews the decision of the highest state court to address the merits of the petitioner's claim in a reasoned decision.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-804 (1991).  In the absence of a decision from the highest state court, the Court "looks through" to the "last reasoned decision" addressing the particular claim.  Id.; Shackleford v. Hubbard, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).  Here, the Court of Appeal's decision on direct appeal is the last reasoned decision to address Petitioner's claim that the trial court erred in denying his Romero motion.  The IAC claim at issue was presented only to the California Supreme Court, which summarily denied relief.  "Thus, when the state court does not supply reasoning for its decision, [the court is] instructed to engage in an independent review of the record and ascertain whether the state court's decision was objectively unreasonable."  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (internal quotations and citations omitted).

**B.    28 U.S.C. §§ 2254(D)(2), 2254(E)(1)**

A federal habeas court may grant a writ if it concludes a state court's adjudication of a claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  An unreasonable determination of the facts occurs where a state court fails to consider and weigh highly probative, relevant evidence, central to a petitioner's claim, that was properly presented and made part of the state court record.  Taylor v. Maddox, 366 F.3d 992, 1005 (9th Cir. 2004).  A district court must presume correct any determination of a factual issue made by a state court unless a petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Section 2254(d)(2) applies to an intrinsic review of a state court's fact-finding process, or situations in which the petitioner challenges a state court's fact-findings based entirely on the state court record, whereas § 2254(e)(1) applies to challenges based on extrinsic evidence, or evidence presented for the first time in federal court.  See Taylor, 366 F.3d at 999-1000.  In Taylor, the Ninth Circuit established a two-part analysis under §§ 2254(d)(2) and 2254(e)(1).  Id.  First, federal courts must undertake an "intrinsic review" of a state court's fact-finding process under the "unreasonable determination" clause of § 2254(d)(2).  Id. at 1000.  The intrinsic review requires federal courts to examine the state court's fact-finding process, not its findings.  Id.  Once a state court's fact-finding process survives this intrinsic review, the second part of the analysis begins by dressing the state court finding in a presumption of correctness under § 2254(e)(1).  Id.  According to the AEDPA, this presumption means that the state court's fact-finding may be overturned based on new evidence presented by a petitioner for the first time in federal court only if such new evidence amounts to clear and convincing proof a state court finding is in error.  See 28 U.S.C. § 2254(e)(1).  "Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once the state court's fact-findings survive any intrinsic challenge; they do not apply to a challenge that is governed by the deference implicit in the 'unreasonable determination' standard of

section 2254(d)(2)." <u>Taylor</u>, 366 F.3d at 1000.  If constitutional error is found, habeas relief is warranted only if the error had a "substantial and injurious effect or influence in determining [the] jury's verdict." <u>Penry v. Johnson</u>, 532 U.S. 782, 795 (2001) (quoting <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993)).

## III.   LEGAL CLAIMS

### A.   INEFFECTIVE ASSISTANCE OF COUNSEL

A claim for ineffective assistance of counsel under the Sixth Amendment is reviewed under the two-prong test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688.  Because of the difficulties inherent in fairly evaluating counsel's performance, courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.

To satisfy the second prong under <u>Strickland</u>, petitioner must establish that he was prejudiced by counsel's substandard performance. <u>See Gonzalez v. Knowles</u>, 515 F.3d 1006, 1014 (9th Cir. 2008) (citing <u>Strickland</u>, 466 U.S. at 694).  Under <u>Strickland</u>, "[o]ne is prejudiced if there is a reasonable probability that but-for counsel's objectively unreasonable performance, the outcome of the proceeding would have been different." <u>Id.</u> Judicial scrutiny of counsel's performance is "highly deferential." <u>Strickland</u>, 466 U.S. at 689. A claim for ineffective assistance of counsel fails if either one of the prongs is not satisfied. <u>See Strickland</u>, 466 U.S. at 697.

Petitioner contends that he received ineffective assistance from his trial counsel prior to the entry of his plea. Pet. at 15-18, 21-22.[2] Specifically, Petitioner claims that his trial counsel failed to: prepare any pretrial motions, <u>id.</u> at 7, 21; conduct a proper pretrial

_____

[2] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by Petitioner.

11

United States District Court
Northern District of California

investigation by contacting and interviewing witness, id. at 15; and "develop[] any defense whatsoever" for trial, id.  Petitioner also asserts defense counsel coerced him to plead no contest and incorrectly advised him of his maximum sentencing exposure.  Id. at 6.

### 1.    Pre-Plea Conduct Not Pertaining to Decision to Plead No Contest

A defendant who pleads guilty cannot later raise in habeas corpus proceedings independent claims relating to the deprivation of constitutional rights that occurred prior to his plea.  Haring v. Prosise, 462 U.S. 306, 319-20 (1983).  Rather, the only challenges left open in a federal habeas action after a guilty plea are to the voluntary and intelligent character of the plea and the nature of the advice of counsel to plead.  See Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).  Under California law, a plea of nolo contendere in a felony case is the equivalent to a plea of guilty "for all purposes."  Cal. Penal Code § 1016.[3]  By pleading no contest, Petitioner waived his objections to any alleged pre-plea constitutional violations.  See Haring, 462 U.S. at 319-20 (guilty plea forecloses consideration of pre-plea constitutional deprivations).

Consistent with the aforementioned United States Supreme Court authority, the Court will consider Petitioner's challenges to the voluntary and intelligent character of his no contest plea and the nature of the advice of his defense counsel to plead.  See Hill, 474 U.S. at 56-57; Tollett, 411 U.S. at 267.  Specifically, the Court analyzes below Petitioner's claim that defense counsel coerced him to plead no contest and incorrectly advised him of his maximum sentencing exposure.  Such pre-plea conduct would be relevant because they affected defense counsel's advice to Petitioner to plead no contest.  Id.  However, Petitioner is barred from raising the remaining grounds of his IAC claim involving defense counsel's pre-plea conduct that does *not* pertain to the decision to plead no contest,

---

[3] "[A] plea of nolo contendere shall be considered the same as a plea of guilty and that, upon a plea of nolo contendere, the court shall find the defendant guilty.  The legal effect of such a plea, to a crime punishable as a felony, shall be the same as that of a plea of guilty for all purposes."  Cal. Penal Code § 1016.

United States District Court
Northern District of California

including counsel's alleged failure to prepare any pretrial motions, to conduct a proper pretrial investigation by contacting and interviewing witness, and to develop a defense for trial. Cf. Moran v. Godinez, 57 F.3d 690, 700 (9th Cir. 1994) (refusing to consider contention that petitioner's attorneys were ineffective because they failed to attempt to prevent the use of his confession as pre-plea constitutional violation). Accordingly, Petitioner is not entitled to habeas relief based on the pre-plea conduct of his defense counsel *not* pertaining to the decision to plead no contest.

### 2.   Coercion

A defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases. Hill, 474 U.S. at 56. Due process requires that a guilty plea be both knowing and voluntary. See Boykin v. Alabama, 395 U.S. 238, 242-43 (1969). A plea is "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion. Brady v. United States, 397 U.S. 742, 754-55 (1970). A plea induced by promises or threats which deprive it of the character of a voluntary act is void. See Machibroda v. United States, 368 U.S. 487, 493 (1962). Although coercion by a defendant's attorney or other third party is unacceptable, "[m]ere advice or strong urging by third parties to plead guilty based on the strength of the state's case does not constitute undue coercion." Iaea v. Sunn, 800 F.2d 861, 866-68 (9th Cir. 1986).

Petitioner contends his attorney told him "he would only receive a total of 13 years[4] . . . and [that] he [m]ust 'take the deal!'" Id. According to Petitioner, counsel told him to waive his rights on the record during the plea colloquy and "to make the waiver appear to be knowingly and understandingly and explicitly made." Id. Specifically, counsel stated, "[j]ust personally and explicitly waive your rights, your consequence [is]

---

[4] The Court notes that there is no calculation in the record breaking down Petitioner's allegation of defense counsel's calculation of the thirteen-year maximum exposure.

United States District Court
Northern District of California

1   13 years with a 'lid' . . . it's all worked out . . . ."  Id.  Petitioner alleges that had he been

2   adequately advised regarding his maximum exposure and not coerced to take the plea, he

3   would have proceeded to trial because there was a "strong possibility a jury would have

4   exonerated [him]."  Id. at 21.

5          As an initial matter, Petitioner's claim of coercion directly contradicts his sworn

6   representations to the trial court.  At the hearing on August 26, 2008, Petitioner stated

7   under oath that his decision to enter a plea was not coerced.  When asked whether he had

8   been threatened, *pressured or coerced* in any way to persuade him to enter a no contest

9   plea, Petitioner answered in the negative.  Answer, Ex. 2A at 4.  Moreover, he stated that

10  his decision was the result of sufficient discussions with his defense counsel regarding the

11  nature, elements of, defenses to, and consequences of pleading no contest to the charges.

12  Id.  When queried whether he understood the specifics of the charges and that he was

13  voluntarily waiving his rights to a jury trial, to confront witnesses, against self-

14  incrimination, and to present a defense, Petitioner answered in the affirmative.  Id. at 6-8.

15  Such assertions at a plea hearing carry significant weight and carry a presumption of

16  verity.  See Jones, 66 F.3d at 204-205.  Petitioner's unsupported and conclusory statement

17  that he was "coerced" into pleading no contest is insufficient to overcome the presumption

18  of verity established by his previous statements under oath.  See Blackledge, 431 U.S. at

19  73-74 ("The subsequent presentation of conclusory allegations unsupported by specifics is

20  subject to summary dismissal, as are contentions that in the face of the record are wholly

21  incredible."); Jones, 66 F.3d at 204-205 (conclusory allegations "without reference to the

22  record or any document" are insufficient to support a claim for habeas relief) (alteration

23  and internal quotation marks omitted)).

24         The record also supports the conclusion that Petitioner's plea was made knowingly

25  and voluntarily.  Because Petitioner is challenging the state court's rejection of his IAC

26  claim based on the state court record (i.e., he disagrees with the trial court's findings), the

27  Court must first determine whether the state court's fact-finding process survives intrinsic

28  review.  See Taylor, 366 F.3d at 999-1000 (holding that a state court's factual findings are

14

1   entitled to deference only if the state court's fact-finding process survives our intrinsic

2   review pursuant to AEDPA's "unreasonable determination" clause); see also Buckley v.

3   Terhune, 397 F.3d 1149, 1157-58 (9th Cir. 2005) aff'd en banc, 411 F.3d 688 (9th Cir.

4   2006), cert. denied, 550 U.S. 913 (2007) (finding state habeas court's fact-finding process

5   "intrinsically" reasonable where the court considered all of the evidence submitted by

6   petitioner and did not refuse him the opportunity to develop further evidence).  "[A] state

7   court's factfinding process is materially defective" only if any court "to whom the defect is

8   pointed out would be unreasonable in holding that the state court's fact-finding process was

9   adequate."  Murray v. Schiro, 745 F.3d 984, 999 (9th Cir. 2014).

10      In the instant case, the trial court considered Petitioner's responses during the plea

11   colloquy before making its determination that the plea was made knowingly and

12   voluntarily.  Answer, Ex. 2A at 18.  The record shows that Petitioner had no difficulty

13   expressing himself to the trial court, and there is no evidence of coercion.  The trial court

14   also credited defense counsel's response that he believed his client understood his rights

15   and was in the proper state of mind to intelligently enter a no contest plea.  Id. at 11.

16   Notably, there were multiple opportunities for Petitioner to express concern or ask

17   questions about his plea or to express feelings of coercion; but no such questions were

18   asked nor did he complain about being pressured or coerced.  It is not the province of the

19   Court to reassess credibility nor reweigh the evidence.  Cavazos v. Smith, – U.S. –, –, 132

20   S. Ct. 2, 4 (2011) (per curiam).  Rather, this Court can only examine whether the trial court

21   considered all of the evidence and whether it allowed Petitioner an opportunity to develop

22   further evidence.  This Court has done so and concludes that the trial court's fact-finding

23   process was intrinsically reasonable.

24      Having determined the trial court's fact-finding process survives an intrinsic

25   review, the Court now turns to the court's determination of the facts which is "dressed in a

26   presumption of correctness."  Taylor, 366 F.3d at 1000.  Under section 2254(e)(1), the trial

27   court's factual findings underlying its conclusion that the plea was knowing and voluntary

28   are presumed correct unless rebutted by clear and convincing evidence.  Here, Petitioner

United States District Court
Northern District of California

15

fails to rebut the presumed correctness of the trial court's findings that he was properly advised of the consequences of his no contest plea and fully informed of his constitutional rights. Instead, Petitioner argues that defense counsel "knew the exposure to his client was great and that a life sentence was faced, but he kept [Petitioner] in the dark and repeatedly refused to locate witness[es], prepare motions, [and] develop[] any defen[s]e whatsoever for this Petitioner's benefit." Pet. at 15. Coercion, however, focusses in part on "the constitutional acceptability of the external forces inducing the guilty plea." Iaea, 800 F.2d at 867. As such, Petitioner's allegations are, at best, germane to the quality of the representation, not whether he was coerced.

Coercion requires more than a showing that counsel advised Petitioner that the prosecutor's case was strong and that he would be best served by pleading no contest and hoping for leniency from the sentencing judge. Indeed, the prosecution's case was strong, as the victims could testify to the events, and, if he were convicted on all charges, Petitioner faced an indeterminate term of up to life in prison. Therefore, the Court finds it appropriate to defer to the trial court's findings. See Buckley, 397 F.3d at 1160-61 (petitioner did not rebut presumption of correctness where, despite evidence to the contrary, there was sufficient evidence from which the state court could reasonably conclude that petitioner had agreed to sentence he received). Upon presuming correct the trial court's findings that the plea was made knowingly and voluntarily, the Court finds that Petitioner has not established incompetence under the first prong of Strickland based on his unsupported allegations that defense counsel coerced him to plead no contest.

### 3.    Maximum Sentence Exposure

The record also does not support Petitioner's contention that defense counsel provided him with erroneous advice regarding his maximum sentence exposure. The record shows that during the plea colloquy, Petitioner was fully advised of and acknowledged his understanding of the consequences of a no contest plea, including the fact that he faced a maximum exposure of life in prison. Notably, Petitioner expressed no

United States District Court
Northern District of California

United States District Court
Northern District of California

concern during the colloquy regarding any information provided to him by his counsel regarding his sentencing exposure.

Moreover, Petitioner never expressed any concern regarding his counsel's advice despite multiple opportunities to do so.  During the nearly eight months between the time Petitioner entered his plea (August 26, 2008) and was sentenced (April 2, 2009), Petitioner never claimed that he was confused or misinformed about his maximum exposure.  Similarly, on September 2, 2008, when interviewed by the probation office in regards to sentencing, Petitioner did not indicate any misunderstanding as to the possibility of a life sentence in the event the court denied his <u>Romero</u> motion, nor did he claim he believed he would receive a thirteen-year sentence as a result of pleading no contest.  <u>See</u> Answer, Ex. 1B at 463-476.  Although Petitioner had the opportunity to present a written statement to the court conveying concerns regarding his maximum sentence, the record shows that no such statement was presented.  <u>Id.</u> at 469.  Thus, the record shows that despite multiple opportunities to express concern that defense counsel had provided him with incorrect advice regarding his maximum exposure, Petitioner never expressed such concerns.

Finally, Petitioner's allegation that defense counsel advised him of a *thirteen-year maximum exposure* is belied by the fact that counsel filed a <u>Romero</u> motion in order to avoid a *life sentence*.  Petitioner was present at the <u>Romero</u> hearings on March 6, 2009 and March 10, 2009 as well as the sentencing on April 2, 2009, and never expressed any misunderstanding about his maximum exposure.  Answer, Exs. 2B, 2C, 2D.  Nor did Petitioner express any objection when defense counsel argued for the dismissal of the prior strikes and for the trial court to sentence Petitioner to no more than *fifteen* (not thirteen) years in state prison.  Answer, Ex. 2B (RT 3/6/09 re <u>Romero</u> Hearing) at 7.

It also is noteworthy that Petitioner fails to elaborate on how the alleged thirteen-year maximum sentence exposure was calculated.  During the <u>Romero</u> hearing, defense counsel carefully elaborated on the record how he calculated the fifteen-year sentence if the trial court were to strike the priors and give Petitioner a "mid-term sentence."  <u>Id.</u> Meanwhile, during the sentencing hearing, defense counsel argued "that if the Court were

United States District Court
Northern District of California

1   to deny the <u>Romero</u> request that the Court would have the ability under law to run . . . the

2   *life term* in Count 2 concurrent to the term in Count 1."  Answer, Ex. 2D at 24 (emphasis

3   added).  Again, Petitioner failed to indicate that defense counsel had provided him with

4   incorrect advice regarding his maximum exposure.  Indeed, Petitioner failed to object

5   when defense counsel clearly stated on record that there was a risk that Petitioner could be

6   sentenced to life in prison if the <u>Romero</u> motion was denied.  Nothing in the record

7   supports Petitioner's assertion that his trial counsel rendered deficient performance by

8   providing him with incorrect advice regarding his maximum exposure, and the record is

9   clearly to the contrary.  Consequently, Petitioner has failed to overcome <u>Strickland</u>'s

10  "strong presumption" that defense counsel's conduct fell within the wide range of

11  reasonable professional assistance."  <u>See</u> <u>Strickland</u>, 466 U.S. at 689.

12          In sum, the Court finds that Petitioner has failed to satisfy the first prong under the

13  <u>Strickland</u> standard for IAC.  The state supreme court was reasonable in its conclusion that

14  his defense counsel's performance under the Sixth Amendment was not unreasonable in

15  light of the circumstances.

16                              **4.      Prejudice**

17          It is unnecessary for a federal court considering an IAC claim to address the

18  prejudice prong of the <u>Strickland</u> test if Petitioner cannot even establish incompetence

19  under the first prong.  <u>See</u> <u>Siripongs v. Calderon</u>, 133 F.3d 732, 737 (9th Cir. 1998).

20  Assuming arguendo that Petitioner did establish incompetence under <u>Strickland</u>'s first

21  prong, however, Petitioner must show that there is a reasonable probability that, but for

22  defense counsel's incompetence, he would not have pleaded no contest, and instead he

23  would have insisted on going to trial.  <u>See</u> <u>Hill</u>, 474 U.S. at 59.

24          Petitioner has failed to show prejudice.  Given the strong evidence against him,

25  coupled with the lack of any apparent defenses, Petitioner's likelihood of success at trial

26  remained, at best, uncertain.  Nevertheless, Petitioner claims that the jury would have

27  "exonerated" him.  Pet. at 21.  He alleges: "If there is sufficient evidence of self-defense or

28  defense of another, the court has a 'sua sponte' duty to instruct on the defense."  <u>Id.</u> at 18.

However, Petitioner fails to explain how he could have raised such defenses at trial.  In a conclusory fashion, he now claims his innocence and simply posits that "there is a 'significant dispute' that the injury suffered was a serious bodily injury or if Defendant caused them."  Id.  Petitioner argues that defense counsel could have impeached Destiny to show that he did not inflict "serious bodily injury" on his spouse.  He adds that:

> Counsel failed to prepare any pretrial motions[,] contact any witnesses who were critical, depositions, expert reports, evidence or defense reasonable necessary to the client's representation that disputes the perjury by one of the victims that the injury suffered was not serious bodily injury but a direct action of the victim[']s 17 year old daughter Destiny.

Id. at 21.

It bears noting that Petitioner's newly-asserted claim appears to be in direct contravention to the statement he made to the probation officer on September 2, 2008, in which he stated that he "feels bad for the incident and takes responsibility for *his actions*."  Answer, Ex. 1B at 468 (emphasis added).  Nowhere in that interview does Petitioner claim that he was not the perpetrator of the crimes he pleaded no contest to.  Even though Petitioner now attempts to assert possible defenses of self-defense or defense of others, he fails to elaborate on such defenses.  He also fails to address the strength of the evidence of his guilt.  Both victims suffered significant injuries, and both consistently claimed these injuries resulted from Petitioner beating them.  While Petitioner claims otherwise, the evidence supports a strong likelihood that even if Destiny had been properly impeached, a jury could have still found him guilty of the charged offenses.

If found guilty at trial, Petitioner faced the same maximum life sentence that he received as a result of his no contest plea.  However, by pleading no contest, Petitioner at least had the opportunity to seek *leniency* from the sentencing judge by accepting responsibility for his actions and demonstrating remorse for his conduct.  Likewise, a successful Romero motion would have assured Petitioner that he would no longer be facing the possibility of a sentence of life in prison, which would have been a significant benefit.  The trial court acknowledged that his sentence was "subject to [] Romero" during

1   the plea colloquy, however, it stressed that there were no sentencing promises made

2   pursuant to his plea.  Answer, Ex. 2A at 5.  Despite Petitioner's claim to the contrary, his

3   decision to plead no contest was less likely a product of coercion by defense counsel and

4   more likely motivated by a desire to request leniency from the sentencing judge, which is

5   what Petitioner did, albeit unsuccessfully.  Thus, the Court concludes that the state

6   supreme court was reasonable in finding that any alleged deficient performance by defense

7   counsel was harmless because there was no reasonable probability of a different outcome

8   here.  See 28 U.S.C. § 2254(d)(1).

9        Accordingly, the Court finds objectively reasonable the California Supreme Court's

10  denial of Petitioner's IAC claim on the grounds that defense counsel coerced him to plead

11  no contest and incorrectly advised him regarding his maximum exposure.  See Walker, 709

12  F.3d at 939.  Therefore, habeas relief on this claim is DENIED.

13     **B.**   **ROMERO CLAIM**

14       On direct appeal, Petitioner challenged the trial court's denial of his Romero motion

15  as an abuse of discretion.  Pet. at 8, 29-31.  The state appellate court rejected Petitioner's

16  claim as follows:

> In this case, the circumstances evaluated by the trial court
> leading to its conclusion that defendant did not fall outside of
> the Three Strikes sentencing scheme–including defendant's
> prospects, the specifics and violent nature of the current
> offenses, the nature of the prior strike offenses, and the
> evidence that the current offenses reflected an escalation of
> violence perpetrated by defendant–were not "extraordinary";
> they did not justify the conclusion that defendant should be
> "'deemed to fall outside the spirit of the very [Three Strikes]
> scheme within which he squarely falls.'"  . . . .  Accordingly,
> the court's decision did not "'fall [] outside the bounds of
> reason' under the applicable law and the relevant facts.
> [Citations.]"  . . . .  Therefore, we find that the court did not
> abuse its discretion in denying defendant's Romero motion.

24  Answer, Ex. 6 at 10-11 (citations omitted).

25       Whether or not the trial court correctly used its discretion in denying Petitioner's

26  Romero motion is a matter of state, not federal, law.  Brown v. Mayle, 283 F.3d 1019 (9th

27  Cir. 2002), overruled on other grounds, 538 U.S. 901 (2003) (a trial court's refusal to

28  exercise its discretion and strike prior felony convictions is not cognizable on federal

United States District Court
Northern District of California

habeas review).  State law claims are not remediable on federal habeas review, even if state law was erroneously interpreted or applied.  See <u>Swarthout v. Cooke</u>, 131 S. Ct. 859, 861-62 (2011).  Accordingly, the Court finds that Petitioner's <u>Romero</u> claim is not cognizable.

## IV.   CERTIFICATE OF APPEALABILITY

No certificate of appealability is warranted in this case.  For the reasons set out above, jurists of reason would not find this Court's denial of Petitioner's claims debatable or wrong.  See <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Ninth Circuit under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases.

## V.   CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT:

1.   The Petition for Writ of Habeas Corpus is DENIED as to all claims, and a certificate of appealability will not issue.  Petitioner may seek a certificate of appealability from the Ninth Circuit Court of Appeals.

2.   The Clerk of the Court shall enter judgment, terminate any pending motions, and close the file.

IT IS SO ORDERED.

Dated:  July 16, 2014

SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\HC.11\Hooker1652.denyHC-final-rev071414.docx

United States District Court
Northern District of California

21